Leroy **BARCELO**, III, Terri Jo Barcelo, Cecil Wayne Barcelo, Jr., Christopher Lee Barcelo, and Frances Michelle Barcelo Schock, Petitioners,

v.

David J. **ELLIOTT** and Eikenburg & Stiles, P.C., Respondents.

No. 95–0341.

Supreme Court of Texas.

May 10, 1996.

Rehearing Overruled July 8, 1996.

Gary L. McConnell, Angleton, for petitioners.

Sam W. Cruse, Jr., Billy Shepherd, John P. Scott, Houston, for respondents.

PHILLIPS, Chief Justice, delivered the opinion of the Court, in which GONZALEZ, HECHT, ENOCH, and BAKER, Justices, joined.

The issue presented is whether an attorney who negligently drafts a will or trust agreement owes a duty of care to persons intended to benefit under the will or trust, even though the attorney never represented the intended beneficiaries. The court of appeals held that the attorney owed no duty to the beneficiaries, affirming the trial court's summary judgment for the defendant-attorney. —— S.W.2d ——, 1995 WL 51054. Because the attorney did not represent the beneficiaries, we likewise conclude that he owed no professional duty to them. We accordingly affirm the judgment of the court of appeals.

## I

After Frances Barcelo retained attorney David Elliott to assist her with estate planning, Elliott drafted a will and inter vivos trust agreement for her. The will provided for specific bequests to Barcelo's children, devising the residuary of her estate to the inter vivos trust. Under the trust agreement, trust income was to be distributed to Barcelo during her lifetime. Upon her death, the trust was to terminate, assets were to be distributed in specific amounts to Barcelo's children and siblings, and the remainder was to pass to Barcelo's six grandchildren. The trust agreement contemplated that the trust would be funded by cash and shares of stock during Barcelo's lifetime, although the grandchildren contend that this never occurred. Barcelo signed the will and trust agreement in September 1990.

Barcelo died on January 22, 1991. After two of her children contested the validity of the trust, the probate court, for reasons not disclosed on the record before us, declared the trust to be invalid and unenforceable. Barcelo's grandchildren—the intended remainder beneficiaries under the trust—subsequently agreed to settle for what they contend was a substantially smaller share of the estate than what they would have received pursuant to a valid trust.

Barcelo's grandchildren then filed the present malpractice action against Elliott and his law firm (collectively "Elliott"). Plaintiffs allege that Elliott's negligence caused the trust to be invalid, resulting in foreseeable injury to the plaintiffs.[1] Elliott moved for

---

1. The plaintiffs alleged that Elliott acted negligently when he:

   A. provided in the trust agreement that it would not be effective until signed by the trustee, designated to be First City Bank of Houston, and then failed to obtain the execution of the trust document by the trustee;

   B. drafted Mrs. Barcelo's will so as to provide that the residuary of her estate would pass into the trust he sought to create for Mrs.

summary judgment on the sole ground that he owed no professional duty to the grandchildren because he had never represented them. The trial court granted Elliott's motion for summary judgment.

The court of appeals affirmed, concluding that under Texas law an attorney preparing estate planning documents owes a duty only to his or her client—the testator or trust settlor—not to third parties intended to benefit under the estate plan. —— S.W.2d at ——.

## II

■ The sole issue presented is whether Elliott owes a duty to the grandchildren that could give rise to malpractice liability even though he represented only Frances Barcelo, not the grandchildren, in preparing and implementing the estate plan.

### A

At common law, an attorney owes a duty of care only to his or her client, not to third parties who may have been damaged by the attorney's negligent representation of the client. *See Savings Bank v. Ward,* 100 U.S. 195, 200, 25 L.Ed. 621 (1879); Annotation, *Attorney's Liability, to One Other Than Immediate Client, for Negligence in Connection with Legal Duties,* 61 A.L.R. 4th 615, 624 (1988). Without this "privity barrier," the rationale goes, clients would lose control over the attorney-client relationship, and attorneys would be subject to almost unlimited liability. *See* Helen Jenkins, *Privity—A Texas–Size Barrier to Third Parties for Negligent Will Drafting—An Assessment and Proposal,* 42 BAYLOR L.REV. 687, 689–90 (1990). Texas courts of appeals have uniformly applied the privity barrier in the estate planning context. *See Thomas v. Pryor,* 847 S.W.2d 303, 304–05 (Tex.App.—Dallas 1992), *judgm't vacated by agr.,* 863 S.W.2d 462 (Tex.1993); *Dickey v. Jansen,* 731 S.W.2d 581, 582–83 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.); *Berry v. Dod-*

*son, Nunley & Taylor,* 717 S.W.2d 716, 718–19 (Tex.App.—San Antonio 1986), *judgm't vacated by agr.,* 729 S.W.2d 690 (Tex.1987).

Plaintiffs argue, however, that recognizing a limited exception to the privity barrier as to lawyers who negligently draft a will or trust would not thwart the rule's underlying rationales. They contend that the attorney should owe a duty of care to persons who were specific, intended beneficiaries of the estate plan. We disagree.

### B

The majority of other states addressing this issue have relaxed the privity barrier in the estate planning context. *See Lucas v. Hamm,* 56 Cal.2d 583, 15 Cal.Rptr. 821, 825, 364 P.2d 685, 689 (1961), *cert. denied,* 368 U.S. 987, 82 S.Ct. 603, 7 L.Ed.2d 525 (1962); *Stowe v. Smith,* 184 Conn. 194, 441 A.2d 81, 83 (1981); *Needham v. Hamilton,* 459 A.2d 1060, 1062 (D.C.1983); *DeMaris v. Asti,* 426 So.2d 1153, 1154 (Fla.Dist.Ct.App.1983); *Ogle v. Fuiten,* 102 Ill.2d 356, 80 Ill.Dec. 772, 774–75, 466 N.E.2d 224, 226–27 (1984); *Walker v. Lawson,* 526 N.E.2d 968, 968 (Ind. 1988); *Schreiner v. Scoville,* 410 N.W.2d 679, 682 (Iowa 1987); *Pizel v. Zuspann,* 247 Kan. 54, 795 P.2d 42, 51 (1990); *In re Killingsworth,* 292 So.2d 536, 542 (La.1973); *Hale v. Groce,* 304 Or. 281, 744 P.2d 1289, 1292–93 (1987); *Guy v. Liederbach,* 501 Pa. 47, 459 A.2d 744, 751–53 (1983); *Auric v. Continental Cas. Co.,* 111 Wis.2d 507, 331 N.W.2d 325, 327 (1983). *But see Lilyhorn v. Dier,* 214 Neb. 728, 335 N.W.2d 554, 555 (1983); *Viscardi v. Lerner,* 125 A.D.2d 662, 510 N.Y.S.2d 183, 185 (1986); *Simon v. Zipperstein,* 32 Ohio St.3d 74, 512 N.E.2d 636, 638 (1987).

While some of these states have allowed a broad cause of action by those claiming to be intended beneficiaries, *see Stowe,* 441 A.2d at 84; *Ogle,* 80 Ill.Dec. at 775, 466 N.E.2d at 227; *Hale,* 744 P.2d at 1293, others have limited the class of plaintiffs to beneficiaries

Barcelo, and then provided in the trust agreement that the trust would terminate upon Mrs. Barcelo's death, leaving her residuary to pass by intestacy to her children instead of her six grandchildren, including Plaintiffs, as provided in the trust agreement; and

C. failed to take the necessary steps on behalf of Mrs. Barcelo to fund the trust with the shares of stock. . . .

specifically identified in an invalid will or trust. *See Ventura County Humane Society v. Holloway,* 40 Cal.App.3d 897, 115 Cal. Rptr. 464, 468 (1974); *DeMaris,* 426 So.2d at 1154; *Schreiner,* 410 N.W.2d at 683; *Kirgan v. Parks,* 60 Md.App. 1, 478 A.2d 713, 718–19 (1984) (holding that, if cause of action exists, it does not extend to situation where testator's intent as expressed in the will has been carried out); *Ginther v. Zimmerman,* 195 Mich.App. 647, 491 N.W.2d 282, 286 (1992) (same); *Guy,* 459 A.2d at 751–52. The Supreme Court of Iowa, for example, held that

> a cause of action ordinarily will arise only when as a direct result of the lawyer's professional negligence the testator's intent as expressed in the testamentary instruments is frustrated in whole or in part and the beneficiary's interest in the estate is either lost, diminished, or unrealized.

*Schreiner v. Scoville,* 410 N.W.2d 679, 683 (Iowa 1987).

### C

We agree with those courts that have rejected a broad cause of action in favor of beneficiaries. These courts have recognized the inevitable problems with disappointed heirs attempting to prove that the defendant-attorney failed to implement the deceased testator's intentions. Certainly allowing extrinsic evidence would create a host of difficulties. In *DeMaris v. Asti,* 426 So.2d 1153, 1154 (Fla.Dist.Ct.App.1983), for example, the court concluded that "[t]here is no authority—the reasons being obvious—for the proposition that a disappointed beneficiary may prove, by evidence totally extrinsic to the will, the testator's testamentary intent was other than as expressed in his solemn and properly executed will." Such a cause of action would subject attorneys to suits by heirs who simply did not receive what they believed to be their due share under the will or trust. This potential tort liability to third parties would create a conflict during the estate planning process, dividing the attorney's loyalty between his or her client and the third-party beneficiaries.

Moreover, we believe that the more limited cause of action recognized by several jurisdictions also undermines the policy rationales supporting the privity rule. These courts have limited the cause of action to beneficiaries specifically identified in an invalid will or trust. Under these circumstances, courts have reasoned, the interests of the client and the beneficiaries are necessarily aligned, negating any conflict, as the attorney owes a duty only to those parties which the testator clearly intended to benefit. *See, e.g., Needham,* 459 A.2d at 1062.

In most cases where a defect renders a will or trust invalid, however, there are concomitant questions as to the true intentions of the testator. Suppose, for example, that a properly drafted will is simply not executed at the time of the testator's death. The document may express the testator's true intentions, lacking signatures solely because of the attorney's negligent delay. On the other hand, the testator may have postponed execution because of second thoughts regarding the distribution scheme. In the latter situation, the attorney's representation of the testator will likely be affected if he or she knows that the existence of an unexecuted will may create malpractice liability if the testator unexpectedly dies.

The present case is indicative of the conflicts that could arise. Plaintiffs contend in part that Elliott was negligent in failing to fund the trust during Barcelo's lifetime, and in failing to obtain a signature from the trustee. These alleged deficiencies, however, could have existed pursuant to Barcelo's instructions, which may have been based on advice from her attorneys attempting to represent her best interests. An attorney's ability to render such advice would be severely compromised if the advice could be second-guessed by persons named as beneficiaries under the unconsummated trust.

In sum, we are unable to craft a bright-line rule that allows a lawsuit to proceed where alleged malpractice causes a will or trust to fail in a manner that casts no real doubt on the testator's intentions, while prohibiting actions in other situations. We believe the greater good is served by preserving a bright-line privity rule which denies a cause of action to all beneficiaries whom the attorney did not represent. This will ensure that attorneys may in all cases zealously repre-

sent their clients without the threat of suit from third parties compromising that representation.

■ We therefore hold that an attorney retained by a testator or settlor to draft a will or trust owes no professional duty of care to persons named as beneficiaries under the will or trust.[2]

### D

■ Plaintiffs also contend that, even if there is no tort duty extending to beneficiaries of an estate plan, they may recover under a third-party-beneficiary contract theory. While the majority of jurisdictions that have recognized a cause of action in favor of will or trust beneficiaries have done so under negligence principles,[3] some have allowed recovery in contract.[4]

■ In Texas, however, a legal malpractice action sounds in tort and is governed by negligence principles. *See Cosgrove v. Grimes,* 774 S.W.2d 662, 664 (Tex.1989); *Willis v. Maverick,* 760 S.W.2d 642, 644 (Tex. 1988). *Cf. Heyer v. Flaig,* 70 Cal.2d 223, 74 Cal.Rptr. 225, 228, 449 P.2d 161, 164 (1969) (recognizing that third-party-beneficiary contract theory "is conceptually superfluous since the crux of the action must lie in tort in any case; there can be no recovery without

negligence"). Even assuming that a client who retains a lawyer to draft an estate plan intends for the lawyer's work to benefit the will or trust beneficiaries, the ultimate question is whether, considering the competing policy implications, the lawyer's professional duty should extend to persons whom the lawyer never represented. For the reasons previously discussed, we conclude that the answer is no.

For the foregoing reasons, we affirm the judgment of the court of appeals.

OWEN, J., did not participate in the decision.

CORNYN, Justice, joined by ABBOTT, Justice, dissenting.

With an obscure reference to "the greater good," 923 S.W.2d at 578, the Court unjustifiably insulates an entire class of negligent lawyers from the consequences of their wrongdoing, and unjustly denies legal recourse to the grandchildren for whose benefit Ms. Barcelo hired a lawyer in the first place. I dissent.

By refusing to recognize a lawyer's duty to beneficiaries of a will, the Court embraces a rule recognized in only four states,[1] while simultaneously rejecting the rule in an overwhelming majority of jurisdictions.[2] Not-

---

**2.** We express no opinion as to whether the beneficiary of a trust has standing to sue an attorney representing the trustee for malpractice. *Cf. Thompson v. Vinson & Elkins,* 859 S.W.2d 617, 621–23 (Tex.App.—Houston [1st Dist.] 1993, writ denied) (holding that beneficiary lacked standing to sue trustee's attorney).

**3.** *See Heyer v. Flaig,* 70 Cal.2d 223, 74 Cal.Rptr. 225, 228, 449 P.2d 161, 164 (1969); *Needham,* 459 A.2d at 1062; *DeMaris,* 426 So.2d at 1154; *Schreiner,* 410 N.W.2d at 682; *Pizel,* 795 P.2d at 51; *Auric,* 331 N.W.2d at 329.

**4.** *See Stowe,* 441 A.2d at 83; *Killingsworth,* 292 So.2d at 542; *Guy,* 459 A.2d at 751–52. Other states have recognized a cause of action under both negligence and contract. *See Ogle,* 80 Ill. Dec. at 775, 466 N.E.2d at 227; *Hale,* 744 P.2d at 1292.

**1.** *See Williams v. Bryan, Cave, McPheeters & McRoberts,* 774 S.W.2d 847, 849 (Mo.Ct.App. 1989); *St. Mary's Church v. Tomek,* 212 Neb. 728, 325 N.W.2d 164, 165 (1982); *Viscardi v.*

*Lerner,* 125 A.D.2d 662, 510 N.Y.S.2d 183, 185 (1986); *Simon v. Zipperstein,* 32 Ohio St.3d 74, 512 N.E.2d 636, 638 (1987).

**2.** *See Rathblott v. Levin,* 697 F.Supp. 817, 819–20 (D.N.J.1988) (applying New Jersey law); *Wisdom v. Neal,* 568 F.Supp. 4, 8 (D.N.M.1982) (applying New Mexico law); *Lucas v. Hamm,* 56 Cal.2d 583, 15 Cal.Rptr. 821, 824, 364 P.2d 685, 688 (1961), *cert. denied,* 368 U.S. 987, 82 S.Ct. 603, 7 L.Ed.2d 525 (1962); *Stowe v. Smith,* 184 Conn. 194, 441 A.2d 81, 83–84 (1981); *Needham v. Hamilton,* 459 A.2d 1060, 1062 (D.C.1983); *Lorraine v. Grover, Ciment, Weinstein & Stauber, P.A.,* 467 So.2d 315, 317 (Fla.Dist.Ct.App.1985); *Ogle v. Fuiten,* 102 Ill.2d 356, 80 Ill.Dec. 772, 775, 466 N.E.2d 224, 227 (1984); *Walker v. Lawson,* 514 N.E.2d 629, 633 (Ind.Ct.App.1987); *Schreiner v. Scoville,* 410 N.W.2d 679, 682 (Iowa 1987); *Pizel v. Zuspann,* 247 Kan. 54, 795 P.2d 42, 51 (1990); *Succession of Killingsworth,* 292 So.2d 536, 542 (La.1973); *Mieras v. DeBona,* 204 Mich.App. 703, 516 N.W.2d 154, 157 (1994); *Simpson v. Calivas,* 139 N.H. 1, 650 A.2d 318, 322–23 (1994); *Hale v. Groce,* 304 Or. 281, 744 P.2d 1289, 1292 (1987); *Guy v. Liederbach,* 501

withstanding the fact that in recent years the Court has sought to align itself with the mainstream of American jurisprudence,[3] the Court inexplicably balks in this case.

The threshold question in a negligence action, including a legal malpractice suit, is duty. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987); *see Cosgrove v. Grimes,* 774 S.W.2d 662, 664 (Tex.1989) (holding that a legal malpractice action in Texas is grounded in negligence). Whether a defendant owes a duty to the plaintiff depends on several factors, including risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against injury, and the consequences of placing the burden on the defendant. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990).

The foreseeability of harm in this case is not open to serious question. Because Ms. Barcelo hired Mr. Elliott to accomplish the transfer of her estate to her grandchildren upon her death, the potential harm to the beneficiaries if the testamentary documents were incorrectly drafted was plainly foreseeable. *See Lucas,* 15 Cal.Rptr. at 824, 364 P.2d at 688; *see also Heyer v. Flaig,* 70 Cal.2d 223, 74 Cal.Rptr. 225, 228, 449 P.2d 161, 164–65 (1969) ("The attorney's actions and omissions will affect the success of the client's testamentary scheme; and thus the possibility of thwarting the testator's wishes immediately becomes foreseeable. Equally foreseeable is the possibility of injury to an intended beneficiary."). Foreseeability of

harm weighs heavily in favor of recognizing a duty to intended beneficiaries.

Additionally, the Court's decision means that, as a practical matter, no one has the right to sue for the lawyer's negligent frustration of the testator's intent. A flaw in a will or other testamentary document is not likely be discovered until the client's death. And, generally, the estate suffers no harm from a negligently drafted testamentary document. *Heyer,* 74 Cal.Rptr. at 228, 449 P.2d at 165. Allowing beneficiaries to sue would provide accountability and thus an incentive for lawyers to use greater care in estate planning. Robert L. Rabin, *Tort Recovery for Negligently Inflicted Economic Loss,* 37 STAN.L.REV. 1513, 1521 (1985). Instead, the Court decides that an innocent party must bear the burden of the lawyer's error. The Court also gives no consideration to the fair adjustment of the loss between the parties, one of the traditional objectives of tort law. *See* W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 4, at 24–25 (5th ed. 1984); Robert E. Litan et al., *The U.S. Liability System: Background and Trends, in* LIABILITY: PERSPECTIVES AND POLICY 1, 3 (Robert E. Litan and Clifford Winston eds., 1988). These grounds for the imposition of a legal duty in tort law generally, which apply to lawyers in every other context, are no less important in estate planning.

Nor do the reasons the Court gives for refusing to impose a duty under these cir-

---

Pa. 47, 459 A.2d 744, 746 (1983); *Trask v. Butler,* 123 Wash.2d 835, 872 P.2d 1080, 1084 (1994); *Auric v. Continental Casualty Co.,* 111 Wis.2d 507, 331 N.W.2d 325, 327 (1983). *See also* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 73(3) & cmt. f, illus. 2 (Tentative Draft No. 7, 1994) (recognizing lawyer's duty to a will beneficiary and stating that lawyer has duty to non-client when lawyer "knows that a client intends the lawyer's services to benefit the non-client, and such a duty substantially promotes enforcement of the lawyer's obligations to the client and would not create inconsistent duties").

**3.** *See, e.g., In re Humphreys,* 880 S.W.2d 402, 407–08 (Tex.1994) (holding that willful tax evasion is a crime involving moral turpitude); *National County Mut. Fire Ins. Co. v. Johnson,* 879 S.W.2d 1, 3–4 (Tex.1993) (holding that family member exclusions in automobile insurance con-

tracts are invalid); *Ruiz v. Conoco, Inc.,* 868 S.W.2d 752, 755–56 (Tex.1993) (holding that commencement of a lawsuit by an incapacitated person, considered alone, is insufficient to deny tolling of statute of limitations); *Twyman v. Twyman,* 855 S.W.2d 619, 621–22 (Tex.1993) (recognizing cause of action for intentional infliction of emotional distress); *Association of Texas Professional Educators v. Kirby,* 788 S.W.2d 827, 829–30 (Tex.1990) (recognizing a narrow exception to the enrolled bill rule); *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 353–54 (Tex.1990) (holding that discovery rule does not apply when statute specifically provides accrual date for cause of action); *Willis v. Maverick,* 760 S.W.2d 642, 646–47 (Tex.1988) (holding that the discovery rule applies to legal malpractice actions); *Spring Branch I.S.D. v. Stamos,* 695 S.W.2d 556, 559–60 (Tex.1985) (holding that a student's right to participate in extracurricular activities is not a fundamental constitutional right).

cumstances withstand scrutiny. Contrary to the Court's view, recognizing an action by the intended beneficiaries would not extend a lawyer's duty to the general public, but only to a limited, foreseeable class. Because estate planning attorneys generally do not face *any* liability in this context, potential liability to the intended beneficiaries would not place them in a worse position than attorneys in any other setting.

The Court also hypothesizes that liability to estate beneficiaries may conflict with the attorney's duty to the client. Before the beneficiaries could prevail in a suit against the attorney, however, they would necessarily have to show that the attorney breached a duty to the decedent. This is because the lawyer's duty to the client is to see that the client's intentions are realized by the very documents the client has hired the lawyer to draft. No conflicting duty to the beneficiaries is imposed.

Searching for other hypothetical problems that might arise if a cause of action for the beneficiaries is recognized, the Court observes that a will not executed at the testator's death could in fact express the testator's true intentions. 923 S.W.2d at 578. Granted, such a scenario may be the result of either the testator's indecision or the attorney's negligence. Similarly, a family member might be intentionally omitted from a will at the testator's direction, or negligently omitted because of the drafting lawyer's mistake. In other words, what appears to be attorney negligence may actually reflect the testator's wishes.

But surely these are matters subject to proof, as in all other cases. Nothing distinguishes this class of cases from many others in this respect. The Court fails to consider that the beneficiaries will in each case bear the burden of establishing that the attorney breached a duty to the testator, which resulted in damages to the beneficiaries. Lawyers, wishing to protect themselves from liability, may document the testator's intentions.

In addition, Elliott suggests that allowing beneficiaries to sue the testator's attorney would interfere with the attorney-client privilege, by either encouraging attorneys to violate clients' confidences or by hindering attorneys' ability to defend their actions. This concern, too, is unfounded. Under Texas law, the attorney-client privilege does not survive the testator. *Krumb v. Porter,* 152 S.W.2d 495, 497 (Tex.Civ.App.—San Antonio 1941, writ ref'd); *see Thomas v. Pryor,* 847 S.W.2d 303, 305 (Tex.App.—Dallas 1992), *writ granted and case remanded pursuant to settlement,* 863 S.W.2d 462 (Tex.1993); *see also Stappas v. Stappas,* 271 Ala. 138, 122 So.2d 393, 396 (1960); *Denver Nat'l Bank v. McLagan,* 133 Colo. 487, 298 P.2d 386, 388 (1956); *Manley v. Combs,* 197 Ga. 768, 30 S.E.2d 485, 493 (1944); 1 McCormick on Evidence § 94 (4th ed. 1992); 8 John Henry Wigmore, Wigmore on Evidence § 2314 (3d ed. 1940). This is because the lawyer-client privilege applies only to confidential communications, which are "not intended to be disclosed to third persons." Tex.R.Civ.Evid. 503(a)(5). And, as Professor Wigmore has explained, "[a]s to the *tenor* and *execution* of the will, it seems hardly open to dispute that they are the very facts which the testator expected and intended to be disclosed after his death." Wigmore § 2314, at 613 (emphasis in original).

In sum, I would hold that the intended beneficiary of a will or testamentary trust may bring a cause of action against an attorney whose negligence caused the beneficiary to lose a legacy in whole or in part. Accordingly, I would reverse the judgment of the court of appeals and remand this case to the trial court.

SPECTOR, Justice, dissenting.

The issue in this case is whether the attorney, David Elliott, owed a duty to Frances Barcelo's intended beneficiaries. The majority holds that he did not. The other dissenting justices would recognize a broad cause of action in favor of any person claiming to be an intended beneficiary, regardless of whether the plaintiff is identified in the will or trust instrument. Because I would recognize only a limited cause of action for the intended beneficiaries of wills and trusts, I write separately to dissent.

At common law, an attorney owes no duty to third parties who may have been damaged by the attorney's negligent representation of

the attorney's client. *See Savings Bank v. Ward,* 100 U.S. 195, 25 L.Ed. 621 (1879). As the majority notes, although Texas courts of appeals have consistently accepted this restriction in the estate planning context, most other states addressing this issue have lowered the privity barrier in this area. *See Lucas v. Hamm,* 56 Cal.2d 583, 15 Cal.Rptr. 821, 825, 364 P.2d 685, 689 (1961), *cert. denied,* 368 U.S. 987, 82 S.Ct. 603, 7 L.Ed.2d 525 (1962); *Stowe v. Smith,* 184 Conn. 194, 441 A.2d 81, 83 (1981); *Needham v. Hamilton,* 459 A.2d 1060, 1062 (D.C.1983); *DeMaris v. Asti,* 426 So.2d 1153, 1154 (Fla.Dist.Ct. App.1983); *Ogle v. Fuiten,* 102 Ill.2d 356, 80 Ill.Dec. 772, 774–75, 466 N.E.2d 224, 226–27 (1984); *Walker v. Lawson,* 526 N.E.2d 968, 968 (Ind.1988); *Schreiner v. Scoville,* 410 N.W.2d 679, 682 (Iowa 1987); *Pizel v. Zuspann,* 247 Kan. 54, 795 P.2d 42, 51 (1990); *In re Killingsworth,* 292 So.2d 536, 542 (La. 1973); *Hale v. Groce,* 304 Or. 281, 744 P.2d 1289, 1292–93 (1987); *Guy v. Liederbach,* 501 Pa. 47, 459 A.2d 744, 751–53 (1983); *Auric v. Continental Cas. Co.,* 111 Wis.2d 507, 331 N.W.2d 325, 327 (1983).

I believe that recognizing such a cause of action would further public policy by requiring attorneys to exercise due care in implementing a testator's estate plan. Under current law, only the attorney's client has standing to sue for negligent preparation of the will or trust. Although the testator's personal representative would succeed to this cause of action upon the testator's death, the estate itself may suffer no damage from an invalid will or trust that frustrates the testator's intentions. *See Heyer v. Flaig,* 70 Cal.2d 223, 74 Cal.Rptr. 225, 228, 449 P.2d 161, 165 (1969); *Guy,* 459 A.2d at 749. Consequently, an attorney who negligently drafts a will or trust that is discovered to be invalid after the testator's death is accountable to no one.

I would not go so far as to hold that attorneys who draft wills and trusts have a duty to persons who are not beneficiaries named in the will or trust. Recognizing such a broad cause of action is as likely to frustrate the testator's intent as it is to carry it out. I would, however, allow beneficiaries who are specifically identified on the face of an invalid will or trust to assert a claim.

Recognizing a limited cause of action would subject attorneys who prepare wills and trusts documents to the same standard of care governing attorneys generally. Because I believe that this is sound public policy, I dissent.